**CHCA EAST HOUSTON, L.P. d/b/a East Houston Regional Medical Center, Appellant,**

v.

**Bill HENDERSON, D.D.S., Appellee.**

No. 14–01–00967–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 9, 2003.

Eric G. Carter, John Christopher Dunne, Houston, for appellant.

Tammy Danberg–Farney, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices HUDSON and FOWLER.

## OPINION

SCOTT BRISTER, Chief Justice.

This relatively simple case raises relatively complex problems. For many years, appellee Bill Henderson has occupied a

dental office in a professional building in east Houston. Although the lease he signed in 1991 expired in 1994, he continued under the terms of that lease on a month-to-month basis. For several months in 1996, he admits he paid no rent due to hip and knee problems. In September 1996, he signed a new lease, and it is undisputed he has not missed any rental payments since.

But the parties disagree whether he is current. Appellant, CHCA East Houston, L.P. d/b/a East Houston Regional Medical Center ("East Houston"), applied some of the payments made after October 1996 to rents allegedly due under the first lease, thus leaving a shortfall of $10,872 under the second. *See W.E. Grace Mfg. Co. v. Levin,* 506 S.W.2d 580, 585 (Tex.1974) (holding that unless debtor specifically directs payment, creditor may apply payments to any valid claim against debtor). Henderson objected to this offset, asserting East Houston had no assignment or other authority to collect rent under the first lease or apply payments to it. After a bench trial, the trial court agreed.

### I. Motion to Dismiss Appeal

■ At the outset, Henderson argues we must dismiss this appeal because appellant East Houston was not a party to the trial court's judgment. The suit below was filed by, and judgment was entered against, Sunbelt Regional Medical Center, Inc. d/b/a East Houston Regional Medical Center ("Sunbelt, Inc."). At trial, documents were introduced showing that Sunbelt, Inc. sold and assigned all its assets (including Henderson's account receivable) to East Houston in a series of transactions on February 29, 2000.

■ An assignee, though not a party below, may file an appeal in its own name. *See Motor Vehicle Bd. of Tex. Dept. of Transp. v. El Paso Indep. Auto. Dealers*

*Ass'n, Inc.,* 1 S.W.3d 108, 110 (Tex.1999) (discussing doctrine of virtual representation). Accordingly, we hold East Houston as assignee of the plaintiff below may appeal. We deny Henderson's motion to dismiss and his related claim for damages for a frivolous appeal.

### II. Standing, Capacity, or Something Else?

■ Henderson's primary defense at trial was that Sunbelt, Inc. (the plaintiff below, and East Houston's assignor) was not a party to the first lease, and had no assignment or other authority to apply payments to it. Because he objects that Sunbelt, Inc. was not a proper party (rather than merely improperly named), the allegation is one of misidentification. *See Enserch Corp. v. Parker,* 794 S.W.2d 2, 4–5 (Tex.1990) (distinguishing between "misnomer" cases involving correct party incorrectly named, and "misidentification" cases involving incorrect party). But there appears to be some doubt whether misidentification raises a question of standing, capacity, or something else. The answer is critical, as it determines the time and manner of raising an objection.

■ The trial court treated the question as one of standing, concluding that Sunbelt, Inc. had no standing to enforce the first lease. Standing focuses on whether the plaintiff has a sufficient personal stake in a controversy. *See Nootsie, Ltd. v. Williamson County Appraisal District,* 925 S.W.2d 659, 661 (Tex.1996). As a component of subject-matter jurisdiction, it cannot be waived, and may be asserted for the first time on appeal. *Id.* at 662.

■ Several appellate courts, however, have treated misidentification of a contract party as a question of capacity. For example, our colleagues downstairs have held that a complaint that the plaintiff was not

the successor-in-interest of the original landlord was one of capacity. *See Nine Greenway Ltd. v. Heard, Goggan, et al.*, 875 S.W.2d 784, 787 (Tex.App.-Houston [1st Dist.] 1994, writ denied).[1] Capacity focuses on whether a party has the legal ability to sue. *See Nootsie*, 925 S.W.2d at 661. It must be raised by verified objection. *See* Tex.R. Civ. P. 93(2).

■ Alternatively, this Court and others have allowed litigants to treat misidentification as a "defect of parties." *See Ensearch Corp.*, 794 S.W.2d at 6 (calling error as to true defendant among affiliated corporations a "defect in the parties"); *Wiggins v. Overstreet*, 962 S.W.2d 198, 200 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (affirming defect-of-parties objection that proper party was not individual but company bearing his name). Generally, a "defect of parties" refers to joinder problems involving necessary or indispensable parties. *See, e.g., Allison v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 703 S.W.2d 637, 638 (Tex.1986). It too must be raised by verified objection. *See* Tex.R. Civ. P. 93(4).

Finally, at least one court has held that misidentification among affiliated corporations is not a matter of capacity *or* standing, but simply part of the facts to be proved at trial. *See Trailways, Inc. v. Clark*, 794 S.W.2d 479, 490–91 (Tex.App.-Corpus Christi 1990, writ denied). If that is correct, an objection at trial should be sufficient. *See* Tex.R.App. P. 33.1.

■ For several reasons, we agree with the majority of courts that misidentification among affiliated corporations or successors-in-interest is an issue that must be raised by verified pleading. First, treating it as a standing complaint risks substantial waste, as standing may be raised long after the trial is over.[2] Additionally, in many cases (including this one) deciding who should pay whom on a contract goes to the heart of the merits, while standing is generally a question of law determined by the court from the pleadings. *See Texas Natural Resource Conservation Com'n v. IT Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).[3]

Conversely, treating misidentification as a matter that need only be raised by an

---

1. *See also Matthiessen v. Schaefer*, 900 S.W.2d 792, 794–95 (Tex.App.-San Antonio 1995, writ denied) (holding complaint that "John Schaeffer" could not bring counterclaim on earnest money contract signed by "Schaefer Properties" was waived by failure to file Rule 93(2) objection); *Beacon Nat. Ins. Co. v. Reynolds*, 799 S.W.2d 390, 395 (Tex.App.-Fort Worth 1990, writ denied) (holding complaint that policy had been issued by an affiliate of same insurance group was waived by failure to file Rule 93(2) objection).

2. *See Nootsie v. Williamson County Appraisal District*, 925 S.W.2d 659, 662 (Tex.1996). For example, in this case Henderson's trial pleadings did not challenge whether Sunbelt, Inc. could enforce the *second* lease, but he does make that assertion on appeal. If the question is one of standing, this is perfectly proper, even though it was not the focus of

the trial and raises serious questions about Henderson's status as a tenant. *See Air–Ag, Inc. v. F & H Santa Fe Rail, Inc.*, 22 S.W.3d 596, 598–99, (Tex.App.-Fort Worth 2000, no pet. h.) (stating that tenant generally cannot dispute landlord's title, as its own tenancy depends upon it).

3. A review of standing is not limited to the pleadings when a plaintiff is required to prove facts that are "primarily jurisdictional," as when a plaintiff organization attempts to establish associational standing. *See Bland Independent School Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex.2000). But a different rule must apply when the dispute goes to the merits of a claim; otherwise, the trier-of-fact's conclusion that there was no standing would destroy its subject-matter jurisdiction to make that conclusion on the merits.

objection at trial creates other problems. Rental properties often change hands, and the ownership structure may confuse even those who manage the property (as it did in this case). Additionally, a complete stranger to the property is unlikely to have copies of the lease or enough knowledge of rental payments to bring a suit like this one. If misidentification of the owner can be raised for the first time at trial, it may encourage the kind of reclining-behind-fallen-timber that led courts to toll limitations in cases involving misidentified but related entities.[4]

By contrast, treating misidentification as an issue that must be raised by verified pleading (whether labeled "capacity" or "defect of parties") limits proof of a landlord's genealogy to those cases in which a party has some reason to doubt the lineage. It also is parallel to the treatment accorded the closely-related problem of suits brought by or against parties under an assumed name. *See* Tex.R. Civ. P. 28, 93(14).

■ Admittedly, there is some stretching required to fit misidentification within any of the provisions of Rule 93. Successors-in-interest or affiliated corporations are different parties, not different "capacities" of one another. And the only "defect of parties" is an allegation that one of them should be dismissed. But the Texas Supreme Court has approved the application of Rule 93 to other situations involving confusion among parties that are separate entities. *See Pledger v. Schoellkopf,* 762 S.W.2d 145, 146 (Tex.1988) (holding com-

plaint that action belonged to corporation rather than shareholder was waived by failure to file sworn objection to capacity). Accordingly, we agree with those courts that have held misidentification (at least among affiliated corporations or successors-in-interest)[5] is not an issue of standing, but an issue that must be raised by verified pleading.

In this case, Sunbelt, Inc. asserted that payments under the second lease could be applied to the first. Assuming that pleading to be true, then payments on the second lease were short by $10,872. That may not be a large injury, but for purposes of standing, it suffices. Thus, we sustain Sunbelt, Inc.'s third point of error challenging the trial court's conclusion that it had no standing.

Nevertheless, an erroneous conclusion of law does not require reversal if the trial court rendered the proper judgment. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). To that analysis we next turn.

### III. *Who is the Landlord?*

■ In its remaining points of error, East Houston challenges the legal and factual sufficiency of the trial court's findings and conclusions that Sunbelt, Inc. had no right to apply payments made after execution of the second lease to amounts due under the first. Because Henderson filed a verified pleading objecting on this basis, Sunbelt, Inc. was required to prove its entitlement to offset payments against the first lease. The trial court's findings are

---

4. See, e.g., *Chilkewitz v. Hyson,* 22 S.W.3d 825, 830 (Tex.1999); *Bailey v. Vanscot Concrete Co.,* 894 S.W.2d 757, 761 (Tex.1995).

5. Different considerations may apply when a complete stranger to a contract is sued. *See e.g., Miles v. Plumbing Services of Houston, Inc.,* 668 S.W.2d 509, 512–13 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding homeowners' objection that they had no

contract with subcontractor was not a capacity question that had to be raised by verified pleading; *compare Enserch Corp. v. Parker,* 794 S.W.2d 2, 4 (Tex.1990) (tolling limitations when entities were related) *with Matthews Trucking Co., Inc. v. Smith,* 682 S.W.2d 237, 239 (Tex.1984) (holding limitations was not tolled when entity served was unrelated to trucking company involved in accident).

reviewable under the usual legal and factual sufficiency standards. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994).

 The first lease shows the lessor as "HealthTrust, Inc.—The Hospital Company, a Delaware Corporation with respect to Sun Belt Regional Medical Center," and was signed (in illegible handwriting) on behalf of "Sunbelt Regional Medical Center," with no "Inc." or other indication of what the latter entity is. The second lease shows the lessor as "Columbia East Houston Medical Center," and was signed (in different but still illegible handwriting) on behalf of "Columbia East Houston Med. Ctr." Henderson correctly points out that Sunbelt, Inc. is not the lessor on either lease, nor was there evidence of any assignment from either lessor to it.

Sunbelt, Inc. relies on the definition of "Landlord" in the first lease as "the owner of the building," and argues that various documents show that it was the referenced owner (even though the lease lists someone else). The premises in the first lease is described as the "second floor of Sun Belt Regional Medical Center Professional Building"; the second lease describes the premises as "13111 I–10 East Frwy." Several other documents were admitted, but none are sufficient to connect Sunbelt, Inc. to either of these premises:

- *The Deeds.* In 1988, HCA Health Services of Texas, Inc. deeded property (described by metes and bounds) to Sunbelt, Inc. On March 1, 2000, Sunbelt, Inc. deeded property (described by reference to recorded plats) to East Houston. While these deeds transfer *some* property, they do not show that either was Henderson's leased premises. There simply was no evidence tying these varying descriptions together.

- *The Master Lease.* On July 1, 2000, East Houston executed a master lease concerning property (again described by metes and bounds) at 13111 East Freeway. To our untrained eyes, the description does not match the metes and bounds in the 1988 deed to Sunbelt, Inc., and East Houston presented no testimony from those with better-trained eyes. Additionally, as East Houston only sought rent through June 2000, any connection the master lease makes between East Houston and the property comes only after the period relevant to this suit.

- *The Tax Statements.* While tax statements were introduced directed to "Sunbelt Regional Hospital" (for years 1991, 1993, and 1994), and to "Sunbelt Regional Hospital HCA / Healthcare Serv of TX" (for years 1995 and 1996), none show Sunbelt, Inc. as owner, or connect it to the deeds or leases.

- *The Monthly Statements.* All of Henderson's monthly statements came from and required payment to "Healthcare Realty Management" or "Healthcare Realty Services." They show no connection to Sunbelt, Inc.

 To say the least, these documents do not establish—either as a matter of law or by the overwhelming evidence—that Sunbelt, Inc. was entitled to apply payments to the first lease. To the extent there was any ambiguity on the point, we cannot substitute our judgment for that of the trial judge. Accordingly, we overrule Sunbelt, Inc.'s remaining points.[6]

### IV. Henderson's Cross–Points

 In several cross-points, Henderson raises various defensive issues,

**6.** Although not relied upon by the trial court in her findings, Henderson also defended based on testimony that a representative of East Houston said Henderson would not have to pay any rent due under the first lease if he executed the second lease. We agree with

all but one of which are rendered moot by our disposition of Sunbelt, Inc.'s points. But in his fifth cross-point, Henderson asserts entitlement to attorney's fees as the prevailing party under the lease. However, as he did not file a notice of appeal, we may not grant him more favorable relief than the trial court did. *See* TEX.R.APP. P. 25.1(c); *Lubbock County, Texas v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 584 (Tex.2002). Therefore, we overrule Henderson's fifth cross-point.

We affirm the judgment of the trial court.

---

Sunbelt, Inc. that such testimony is barred by the parol evidence rule to the extent it seeks to vary the terms of the second lease. *See Marburger v. Seminole Pipeline Co.,* 957 S.W.2d 82, 86 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). It might constitute fraudulent inducement, but Henderson did not plead such a defense. *See id.;* TEX.R. CIV. P.

94. Of course, the landlord under the first lease could waive past due rent at its option without violating the parol evidence rule. But for that to be the case, Henderson would have to concede that East Houston's agent had authority to act under both the first and second leases, which of course he vigorously denies.