# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00314-CV

**Kathleen Hagan n/k/a Kathleen Horne, Appellant**

**v.**

**David Pauszek, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN102404, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

David Pauszek sued his neighbor Kathleen Hagan to enforce an agreement that Hagan made with David Pauszek's now deceased mother, Shelley Pauszek, to grant an easement to run drinking water lines across Hagan's property. The trial court granted summary judgment in favor of David Pauszek.[1] Because we hold that a condition precedent to the obligation to perform under the agreement did not occur, we reverse the summary judgment and remand the case for further proceedings.

## BACKGROUND

Hagan owned two homes on separate tracts of land prior to entering into the agreement at issue. Both homes shared a water supply from a well located on one of the tracts. In

---

[1] Hagan did not file a cross-motion for summary judgment.

1994 Shelley Pauszek purchased the tract of land with the well. In conjunction with this transaction, the parties entered into a temporary water agreement governing the supply of water to both properties. Shelley Pauszek conveyed her property to her son David Pauszek in June 1997. This dispute between David Pauszek and Hagan concerns the rights and obligations of those parties under the temporary water agreement between Hagan and Shelley Pauszek.

**Temporary Water Agreement**

As part of the agreement, Shelley Pauszek promised to continue providing water from the well to Hagan for a specified period of time. During that time, a grant proposal was pending to extend a water main to the two properties. The grant was for the benefit of low to middle income residents. The agreement describes the grant proposal:

> It is possible that the Hill Country Water Supply ("Water Company") may be in a position to extend water utility services to the Hagan Property and Pauszek Property, and Hagan and Pauszek desire to set forth their agreement with respect to the supply of water by the Water Company as well as easements, water lines and water meters which may be required by the Water Company.

> * * *

> Hagan has advised Pauszek that a grant proposal ("Grant") has been submitted to appropriate governmental authorities ("the Grant Authority") which, if approved would pay the cost of the Water Company extending a water main to the property line of the Hagan Property or to a location within the Hagan Property. In addition, and as an inducement to Mrs. Pauszek to permit Mrs. Hagan to use the Water Well, Mrs. Hagan has advised Pauszek that if the Grant is approved, the Grant will run to the benefit of Mrs. Pauszek, and all costs (including all water company installations fees and tap fees) of extending a water line from the water main through the Hagan Property to the Pauszek Property shall be paid out of the Grant.

2

The agreement provides for two contingencies. If the Grant is not approved, Hagan must terminate her use of the Pauszek well and find her own water supply. If the Grant is approved, Hagan must grant Pauszek an easement across Hagan's property to allow Pauszek to connect to the water main:

> If the Grant is approved, then Hagan agrees to permit Pauszek, at no expense to Pauszek, to have an easement across the Hagan Property for the purposes of running a water line from the water main of the Water Company to the Pauszek Property. The location of the easement, size of the easement, size of the water lines, and other pertinent specifications for the easement shall be determined by the Water Company or the requirements of the Grant or both, as applicable. In the alternative, if the Water Company will permit Pauszek to have separate water lines routed to the Pauszek Property through property other than the Hagan Property, Pauszek may, if Pauszek so elects, use the alternative route for the water lines.

In the trial court, Hagan did not contest David Pauszek's right as the present owner of the Pauszek property to sue to enforce the agreement signed by his mother in the trial court.[2] Instead, she contended that the agreement may not be enforced.

**David Pauszek's Ineligibility for the Grant**

Hagan presented evidence in opposition to summary judgment that, because David Pauszek lived on and owned the property, the Grant would not pay to extend water lines to the

---

[2] In an order dated December 3, 2004, we raised the issue of standing on our own motion and requested supplemental briefing. We now conclude that David Pauszek's authority to enforce an agreement between Hagan and his mother raises a question regarding capacity, not standing. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 926 S.W.2d 659, 661 (Tex. 1996) ("A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy."). A challenge to David Pauszek's legal authority to enforce the agreement must be preserved through an objection at trial. *See CHCA E. Houston, L.P. v. Henderson, D.D.S.*, 99 S.W.3d 630, 632-33 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

3

Pauszek property. Hagan submitted the affidavit of Judy Langford, the president of the consulting firm responsible for administering the Grant. Langford explained that the Grant was reserved for households of low-to-moderate income. She stated that she read a December 1995 newspaper article indicating that David Pauszek had pleaded guilty to illegally using his job with the Federal Deposit Insurance Corporation to arrange for his mother's purchase of the Pauszek property. The article reported that David Pauszek agreed to pay restitution to the FDIC, and the government did not seek forfeiture of the property.[3] Langford then spoke with David Pauszek, who confirmed that information provided on his mother's grant application was false and that he—not his mother—was living on the property. Based on that conversation, Langford dropped the Pauszek property from the Grant proposal because David Pauszek was not of low-to-moderate income.

**Water Connections**

The Grant was eventually approved and a water main was extended to the Hagan property. During that construction, Hagan contacted David Pauszek about granting him an easement to connect the Pauszek property to the water main. Hagan suggested a route for the water lines that ran through her property away from her home. David Pauszek obtained bids for running the lines according to Hagan's suggested route, determined that the $15,000 cost was too expensive, and rejected the offer of an easement along the suggested route.

Hagan then allowed David Pauszek to use the existing water lines that previously connected Hagan's home to the well on the Pauszek property to connect to the water main. Hagan

---

[3] The article also stated that David Pauszek had loaned his mother the money to purchase the property.

wrote a letter proposing an agreement with David Pauszek. The letter stated that the connection was a temporary measure and that Hagan did not want to grant David Pauszek an easement along that line. The proposed agreement noted that the existing line ran extremely close to Hagan's home and several massive trees and detailed how the lines must be maintained. The agreement also required David Pauszek to promise not to sue. David Pauszek rejected the offer and brought suit to enforce the original agreement by compelling Hagan to grant an easement along the existing water connection.

**Litigation**

The trial court granted summary judgment in favor of David Pauszek, holding that the temporary water agreement was enforceable and that Hagan was required under the agreement to grant David Pauszek an easement, which she refused to grant along the established water connection. David Pauszek then filed a "Motion for Final Summary Judgment" seeking a judgment granting specific performance of this agreement. In February 2004, the trial court entered a final judgment in favor of David Pauszek specifically ordering Hagan to grant an easement across her property along the existing water lines.

**DISCUSSION**

Hagan raises five issues challenging the summary judgment granted in favor of David Pauszek. She contends that David Pauszek failed to show the absence of a question of material fact regarding (1) her duty to convey an easement under the contract, (2) whether David Pauszek fraudulently induced Hagan to enter into the contract, (3) the location and scope of the easement

5

granted, (4) whether David Pauszek waived his right to an easement, and (5) whether David Pauszek's attorney's fees were reasonable and necessary.

**Summary Judgment Standard**

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). A party moving for summary judgment must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nixon*, 690 S.W.2d at 549. We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965); *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 871 (Tex. App.—Austin 2001, pet. denied).

**Duty to Convey an Easement**

Hagan contends that the trial court erred by determining that she had a duty to convey an easement to David Pauszek under the contract. She argues that the participation of the Pauszek property in the Grant was a condition precedent to her obligation to perform under the agreement;

6

Shelley Pauszek could not be served by the grant because she did not reside on the property and David Pauszek was ineligible to be served because of his income.

A condition precedent to an obligation to perform is an act or event that must occur subsequent to the formation of a contract before there is a right to immediate performance and before there is a breach of a contractual duty. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *II Deerfield Ltd. Partnership v. Henry Bldg.*, *Inc.*, 41 S.W.3d 259, 264 (Tex. App.—San Antonio 2001, pet. denied). Hagan contends that the agreement contained a condition precedent that the Grant be approved to extend water to the Pauszek property. David Pauszek does not dispute that the approval of the Grant was a condition precedent but maintains that the condition only requires that the Grant be approved to extend water to Hagan's property.

We look to the agreement to ascertain and give effect to the parties' intentions as expressed in the document. *Lopez v. Munoz*, *Hockema*, *& Reed*, *L.L.P*, 22 S.W.3d 857, 861 (Tex. 2000). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). If a contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and it can be construed as a matter of law. *Wal-mart Stores*, *Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001). "Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; for an ambiguity to exist, both interpretations must be reasonable." *Id*. Whether a contract

7

is ambiguous is a question of law for the court to decide in light of the circumstances present at the time the contract was executed. *See National Union Fire Ins. Co. of Pittsburg*, *Pa. v. CBI Indus.*, *Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

Considering the original agreement as a whole, we cannot conclude that the condition precedent it contained is limited to the approval of the Grant to Hagan's property. Although the first sentence of the agreement states that the Grant will "pay the cost of the Water Company extending a water main to the property line of the Hagan Property or to a location within the Hagan Property," the remainder of the agreement contains other descriptions of the Grant. The second sentence states that the Grant will "run[] to the benefit of Mrs. Pauszek, and all costs . . . of extending the water line from the water main through the Hagan Property to the Pauszek Property shall be paid out of the Grant." David Pauszek contends that only the first sentence describes the Grant. He characterizes this second sentence as a promise by Hagan to convey an easement and *to try* to get the government to pay for extending the water lines to the Pauszek property. But the conveyance of an easement is not mentioned at all in the paragraph, and the language of the agreement assumes the Grant will pay, not that Hagan will *try* to secure payment. *See Beaston*, 907 S.W.2d at 433 (we do not read a single sentence in isolation).

Furthermore, other provisions of the agreement anticipate that the Grant Authority will be directly involved in running water lines to the Pauszek property. The agreement states that the Water Company or the Grant Authority will determine the specifications of the easement:

> The location of the easement, size of the easement, size of the water lines, and other pertinent specifications for the easement shall be determined by the Water Company or the requirements of the Grant or both, as applicable.

8

Additionally, the agreement provides that if "the Water Company [will] permit [Shelley] Pauszek to have separate water lines routed to the Pauszek Property through property other than the Hagan Property," Shelley Pauszek may elect whether to connect by that alternate route or by crossing Hagan's property. The agreement contains no alternative provision for who will pay to extend water to the Pauszek property or how the location, size, and scope of the easement will be determined if the Pauszek property is not approved to participate in the Grant.

The fact that the pertinent specifications for the easement were to be determined by the Grant Authority or the Water Company removes any doubt that the approval of the Grant for the benefit of both properties was a condition precedent for the agreement. It also removes any specifications about the location of the easement that could be specifically enforced by the trial court.[4] Any other construction would render provisions of the agreement meaningless and leave important aspects of the agreement undetermined. *See Coker*, 650 S.W.2d at 393 (construction of contract should harmonize and give effect to all provisions of contract so none rendered meaningless).

Reading the original agreement in its entirety, we determine as a matter of law that the parties intended the participation of both the Hagan and Pauszek properties in the Grant as a

---

[4] The trial court incorrectly held that the location, size, and scope of the easement was set by the connection of the Pauszek property to the water main through the existing water lines. *See Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 666 (Tex. 1964) (when pipe laid with consent and acquiescence of grantor of indefinite easement, easement rights become fixed and certain). In *Dwyer*, the pipes were set with the consent and acquiescence of the grantor pursuant to the easement. *See id*. Here, Hagan clearly stated through her proposed agreement that she did not intend to grant an easement by allowing David Pauszek to connect to the water main through the existing lines. Thus, the existing water lines are irrelevant to determining the specification of the easement.

condition precedent to an obligation to perform under the contract. *See Sturges*, 52 S.W.3d at 728 (when contract is not ambiguous, certain or definite legal meaning or interpretation of contract is determined as matter of law). That condition did not occur, and, therefore, Hagan was under no obligation to grant an easement to David Pauszek. *See Hohenberg Bros.*, 537 S.W.2d at 3.

## CONCLUSION

Because we hold that David Pauszek may not enforce the temporary water agreement, we need not address Hagan's other issues. We reverse the trial court's summary judgment in favor of David Pauszek. Because Hagan did not seek summary judgment, we remand the case for further proceedings consistent with this opinion.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed:   March 31, 2005

10