# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================

## ON MOTION FOR REHEARING

========================

### NO. 03-04-00314-CV

### Kathleen Hagan n/k/a Kathleen Horne, Appellant

### v.

### David Pauszek, Appellee

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN102404, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

To address issues raised in David Pauszek's motion for rehearing, we withdraw our opinion and judgment dated March 31, 2005, and substitute this opinion in its place. We overrule the motion for rehearing.

David Pauszek sued his neighbor Kathleen Hagan[1] to enforce an agreement that Hagan made with David Pauszek's now deceased mother, Shelley Pauszek, to grant an easement to run water lines across Hagan's property. The trial court granted summary judgment in favor of

---

[1] Appellant now uses the name Kathleen Horne. Because she is listed as Kathleen Hagan in the agreement at issue, we will refer to her as Hagan.

David Pauszek.[2] Because the trial court erred by determining the location and scope of the easement as a matter of law, and by finding that Hagan had an obligation to grant an easement, we reverse the summary judgment and remand the case for further proceedings.

## BACKGROUND

Hagan and David Pauszek own homes on neighboring tracts of land. Hagan and her former husband, Kenneth Hagan, originally owned both homes that shared a water supply from a well on the land now owned by David Pauszek. Pursuant to the Hagans' divorce, Kenneth Hagan was awarded the land with the well; Kathleen Hagan was allowed to use water from the well. Kenneth Hagan suffered a foreclosure and the property was purchased by Shelley Pauszek in 1993. In 1994, in conjunction with a separate land transaction, Kathleen Hagan and Shelley Pauszek entered into a Temporary Water Agreement concerning the supply of water to the Hagan property and the Pauszek property. Shelley Pauszek conveyed her property to her son David Pauszek in June 1997. This dispute between David Pauszek and Hagan concerns the rights and obligations of those parties under the Temporary Water Agreement between Hagan and Shelley Pauszek.

**Temporary Water Agreement**

As part of the agreement, Shelley Pauszek promised to continue providing water from the well to Hagan for a specified period of time. During that time, a grant proposal was pending to extend water service to the two properties and surrounding neighbors. The agreement describes the grant proposal:

---

[2] Hagan did not file a cross-motion for summary judgment.

2

It is possible that the Hill Country Water Supply ("Water Company") may be in a position to extend water utility services to the Hagan Property and Pauszek Property, and Hagan and Pauszek desire to set forth their agreement with respect to the supply of water by the Water Company as well as easements, water lines and water meters which may be required by the Water Company.

* * *

Hagan has advised Pauszek that a grant proposal ("Grant") has been submitted to appropriate governmental authorities ("the Grant Authority") which, if approved would pay the cost of the Water Company extending a water main to the property line of the Hagan Property or to a location within the Hagan Property. In addition, and as an inducement to Mrs. Pauszek to permit Mrs. Hagan to use the Water Well, Mrs. Hagan has advised Pauszek that if the Grant is approved, the Grant will run to the benefit of Mrs. Pauszek, and all costs (including all water company installations fees and tap fees) of extending a water line from the water main through the Hagan Property to the Pauszek Property shall be paid out of the Grant.

The agreement provides for two contingencies. If the Grant is not approved, Hagan must terminate her use of the Pauszek well and find her own water supply. If the Grant is approved, Hagan must grant Shelley Pauszek an easement across Hagan's property to allow Shelley Pauszek to connect to the water main:

> If the Grant is approved, then Hagan agrees to permit Pauszek, at no expense to Pauszek, to have an easement across the Hagan Property for the purposes of running a water line from the water main of the Water Company to the Pauszek Property. The location of the easement, size of the easement, size of the water lines, and other pertinent specifications for the easement shall be determined by the Water Company or the requirements of the Grant or both, as applicable. In the alternative, if the Water Company will permit Pauszek to have separate water lines routed to the Pauszek Property through property other than the Hagan Property, Pauszek may, if Pauszek so elects, use the alternative route for the water lines.[3]

---

[3] Pauszek does not contend that the Temporary Water Agreement, in itself, grants him an easement. The record reflects that the parties knew how to create an easement had they intended to do so. As part of the 1994 land transaction between Hagan and Shelley Pauszek, Hagan granted Shelley Pauszek a perpetual easement granting access across her land.

In this appeal, Hagan does not challenge David Pauszek's standing as the present owner of the Pauszek property to sue to enforce the agreement signed by his mother in the trial court.[4] Instead, she contends that the Temporary Water Agreement is not enforceable under its own terms.

**David Pauszek's Ineligibility for the Grant**

Hagan presented evidence in opposition to summary judgment that, when it was discovered that David Pauszek, not Shelley Pauszek, lived on and owned the property, the Grant Authority would not pay to extend water lines to the Pauszek property. Hagan submitted the affidavit of Judy Langford, the president of the consulting firm responsible for administering the Grant. Langford explained that the Grant was for the benefit of households of low-to-moderate income. She stated that she read a December 1995 newspaper article indicating that David Pauszek had pleaded guilty to illegally using his job with the Federal Deposit Insurance Corporation to arrange for his mother's purchase of the Pauszek property at below market value. The article reported that David Pauszek agreed to pay restitution to the FDIC, and the government did not seek forfeiture of the property.[5] Langford then spoke with David Pauszek, who confirmed that information provided on his mother's grant application for water was false and additionally that

---

[4] In an order dated December 3, 2004, we raised the issue of standing on our own motion and requested supplemental briefing. We now conclude that David Pauszek's authority to enforce an agreement between Hagan and his mother does not raise a question of standing. *See Austin Nursing Center v. Lovato*, 48 Tex. Sup. Ct. J. 624 Tex. LEXIS 386, at *8-10 (Tex. May 13, 2005); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 926 S.W.2d 659, 661 (Tex. 1996). A challenge to David Pauszek's legal authority to enforce the agreement as a successor in interest must be raised by a verified objection at trial and raised on appeal. *See CHCA E. Houston, L.P. v. Henderson, D.D.S.*, 99 S.W.3d 630, 633 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

[5] The article also stated that David Pauszek had loaned his mother the money to purchase the property.

he—not his mother—was living on the property. Based on that conversation, Langford dropped the Pauszek property from the grant proposal. In a second affidavit, Langford explained that, had the Pauszek property been included in the Grant, she would have worked with Hagan and David Pauszek to determine the location and specifications of the required easement across Hagan's property. If Hagan had requested, the easement would have included provisions to protect Hagan's property and would not have impinged on her home. The expenses for obtaining the easement, such as a survey, would have been eligible for Grant reimbursement.

**Water Connections**

The Grant was eventually approved and a water main was extended to the Hagan property. During that construction, Hagan and David Pauszek discussed a possible easement to connect the Pauszek property to the water main. Hagan suggested a route for the water lines that ran through her property at some distance from her home. David Pauszek obtained bids for running the lines at that location, determined that the cost was too expensive, and rejected the offer of an easement along the suggested route.

Hagan again attempted to accommodate David Pauszek by allowing him to temporarily connect to the water main by using the existing water lines that previously connected Hagan's home to the well on the Pauszek property. In a letter to David Pauszek, Hagan stated that the connection was a temporary measure and that she did not want to grant David Pauszek an easement along that line. The proposed agreement noted her concern that the existing line ran extremely close to Hagan's home and several massive trees and detailed how the lines must be

5

maintained.[6]  The agreement also required David Pauszek to promise not to sue.  David Pauszek

rejected the offer and brought suit to enforce the original agreement by compelling Hagan to grant

an easement along the existing water connection.

**Litigation**

The trial court granted partial summary judgment in favor of David Pauszek, holding

that the Temporary Water Agreement was enforceable and that Hagan was required under the

agreement to grant David Pauszek an easement along the established water connection.  David

Pauszek then filed a "Motion for Final Summary Judgment" seeking specific performance of this

agreement.  In February 2004, the trial court entered a final judgment specifically ordering Hagan

to convey an easement across her property along the existing water connection.

The final judgment specified that the new easement allows David Pauszek the right

to "erect, construct, install and lay and thereafter use, operate, inspect, repair, maintain, replace, and

remove water distribution lines."  It provided that the easement "shall not exceed 15 feet in width

. . . the centerline being the [existing] pipeline . . . ."  It further provided that David Pauszek would

be entitled to "keep the Easement area clear of all obstructions which may endanger or interfere with

the proper maintenance and operation of the water lines . . . including the right to remove or prevent

the construction of any or all buildings, structures or other improvements within the Easement Area."

---

[6]  A survey of the existing water line showed that it passes within 4.6 feet from Hagan's home.  In a discovery response filed with the district court, Hagan stated that the water line is within six feet of her living room window and less than three feet from the sunroom in the back of her home.

6

Finally, the judgment granted David Pauszek the right to recover the $2000 expense of the survey of the existing water line and attorney's fees in the amount of 23,247.12.[7]

## DISCUSSION

Hagan raises five issues challenging the summary judgment granted in favor of David Pauszek. She contends that David Pauszek failed to show the absence of a question of material fact regarding (1) her duty to convey an easement under the contract, (2) the location and scope of the easement granted, (3) whether David Pauszek fraudulently induced Hagan to enter into the contract, (4) whether David Pauszek waived his right to an easement, and (5) whether David Pauszek's attorney's fees were reasonable and necessary.

### Summary Judgment Standard

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). A party moving for summary judgment must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

---

[7] In addition, the final judgment contained a list of fees in the event of an appeal to this Court including $15,000 for briefing an appeal, $3,500 for oral argument, $5,000 for a motion for rehearing, and $5,000 for a motion for rehearing en banc. In the event of a petition for review in the supreme court, the judgment awards $7,500 for the response to a petition for review, $15,000 for briefing on the merits, $5,000 for oral argument, and $5,000 for a motion for rehearing.

*American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nixon*, 690 S.W.2d at 549. We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965); *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 871 (Tex. App.—Austin 2001, pet. denied).

**Location and Scope of Easement**

Hagan contends that the district court erred by (1) establishing the easement along the existing water connection between the two homes and (2) allowing David Pauszek to install multiple water distribution lines. The trial court's summary judgment was based on the holding of the supreme court in *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 666 (Tex. 1964). In *Dwyer*, the supreme court determined that a perpetual easement that did not specify its location and scope became fixed and certain when the pipe was laid with the consent and acquiescence of the grantor. *Id*. Following *Dwyer*, the district court set the easement along the existing water connection on the Hagan property.

However, we find that the underlying rational in *Dwyer* is not applicable to the present case. In *Dwyer*, the pipeline was constructed directly after the easement was granted. *See* 374 S.W.2d at 663. Under those circumstances, it is reasonable to assume that the construction was consistent with the intended terms of the easement. Here, the pipeline upon which the district court based the easement was originally laid for a different purpose than that of the easement. At the time the pipe was laid, Hagan and her husband owned both properties and intended only to bring water from a well on one property to a home on the other. It would make no sense to presume that the

8

laying of pipes to connect a home to a well owned by the same parties would have been intended to set the terms of a perpetual easement granted years later to a stranger in order connect his home to a public water supply. More importantly, Hagan did not consent or aquiese to placement of an easement along the existing water line. Hagan's letter agreeing to the temporary connection along the existing water line expressly disagreed to conveying a perpetual easement in that location. The *Dwyer* principle is inapplicable to these facts. Because *Dwyer* is inapplicable, we hold that the location and scope of the easement cannot be determined as a matter of law.

The summary judgment evidence clearly raises an issue of material fact as to the location and scope of the easement. The easement reflected by the district court's judgment would extend at least ten feet into Hagan's home and would permit David Pauszek to remove that portion of the home or prevent any remodeling or construction in within the easement. Hagan stated repeatedly in her various affidavits that she did not intend to grant an easement along the existing water lines. Hagan also presented a letter she drafted as a proposed agreement with David Pauszek that reflects her intent to greatly limit his rights to use the existing water line.

Additionally, Hagan complains that nothing in the Temporary Water Agreement contemplates the running of multiple water lines as reflected in the final summary judgment.[8] She stated by affidavit that she had discussed the issue of multiple lines with David Pauszek and that she only intended to permit the installation of one water line. Based on this record, Hagan has raised a

---

[8] The final summary judgment allows David Pauszek to "erect, construct, install and lay and thereafter use, operate, inspect, repair, maintain, replace, and remove water distribution *lines*." (Emphasis added.)

question of material fact regarding the intended location and scope of the easement.[9] The district court erred by setting the location and scope of the easement based on *Dwyer*. Under the present circumstances, the location and scope of any easement anticipated by the Temporary Water Agreement must be determined from the intent of the parties as reflected in the language of the agreement.

**Duty to Convey an Easement**

Hagan also contends that the trial court erred by determining that she had a duty to convey an easement to David Pauszek under the contract. She argues that the participation of the Pauszek property in the Grant was a condition precedent to her obligation to perform under the agreement, and the Pauszek property was excluded from the Grant.[10]

A condition precedent to an obligation to perform is an act or event that must occur subsequent to the formation of a contract before there is a right to immediate performance and before there is a breach of a contractual duty. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976); *II Deerfield Ltd. Partnership v. Henry Bldg.*, *Inc.*, 41 S.W.3d 259, 264 (Tex. App.—San Antonio 2001, pet. denied). Hagan contends that the agreement contained a

---

[9] We also note that the Temporary Water Agreement is ambiguous as to who pays for the expenses of the easement. Although the agreement states that Hagan will grant the easement "at no expense to Pauszek," it also states that the costs associated with running a line from the Pauszek property to the water main would be born by the Grant, not Hagan.

[10] David Pauszek averred generally in his original petition that all conditions precedent had been fulfilled or had occurred; Hagan specifically pleaded in her first amended answer and counterclaim that the inclusion of the Pauszek property in the Grant was a condition precedent and that the Pauszek property did not qualify. In light of the record, we reject David Pauszek's contention, raised in his motion for rehearing, that Hagan waived her argument that a condition precedent has not occurred. *See* Tex. R. App. P. 54.

10

condition precedent that the Grant be approved to extend water to the Pauszek property. David Pauszek does not dispute that the approval of the Grant was a condition precedent but maintains that the condition only requires that the Grant be approved to extend water to Hagan's property.

We look to the agreement to ascertain and give effect to the parties' intentions as expressed in the document. *Lopez v. Munoz*, *Hockema*, *& Reed*, *L.L.P*, 22 S.W.3d 857, 861 (Tex. 2000). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "[C]ourts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract." *State Farm Life Ins. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). If a contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and it can be construed as a matter of law. *Wal-mart Stores*, *Inc. v. Sturges*, 52 S.W.3d 711, 728 (Tex. 2001). "Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; for an ambiguity to exist, both interpretations must be reasonable." *Id*. Whether a contract is ambiguous is a question of law for the court to decide in light of the circumstances present at the time the contract was executed. *See National Union Fire Ins. Co. of Pittsburg*, *Pa. v. CBI Indus.*, *Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If the contract is subject to two or more reasonable interpretations, the contract is ambiguous, creating a fact issue on the parties' intent. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We hold that the contract is not ambiguous.

Considering the original agreement as a whole, we cannot conclude as a matter of law that the condition precedent it contained is limited to the approval of the Grant only to Hagan's

11

property. Although the first sentence of the agreement states that the Grant will "pay the cost of the Water Company extending a water main to the property line of the Hagan Property or to a location within the Hagan Property," the remainder of the agreement contains other descriptions of the Grant. The second sentence states that the Grant will "run[] to the benefit of Mrs. Pauszek, and all costs . . . of extending the water line from the water main through the Hagan Property to the Pauszek Property shall be paid out of the Grant." David Pauszek contends that only the first sentence describes the Grant. He characterizes this second sentence as a promise by Hagan to convey an easement and *to try* to get the government to pay for extending the water lines to the Pauszek property. But the conveyance of an easement is not mentioned at all in the paragraph, and the language of the agreement states that the Grant will pay the cost of extending the water line from the main line to the Pauszek property, not that Hagan will *try* to secure payment. *See Beaston*, 907 S.W.2d at 433 (we do not read a single sentence in isolation).

Furthermore, other provisions of the agreement anticipate that the Grant Authority will be directly involved in running water lines to the Pauszek property. The agreement provides that if "the Water Company [will] permit [Shelley] Pauszek to have separate water lines routed to the Pauszek Property through property other than the Hagan Property," Shelley Pauszek may elect whether to connect by that alternate route or by crossing Hagan's property. The agreement contains no alternative provision for who will pay to extend water to the Pauszek property if that property is not approved to participate in the Grant. Additionally, as we have discussed, the only easement referred to is one required by the Grant Authority or the Water Company:

12

The location of the easement, size of the easement, size of the water lines, and other pertinent specifications for the easement shall be determined by the Water Company or the requirements of the Grant or both, as applicable.

The fact that the pertinent specifications for the easement were to be determined by the Grant Authority or the Water Company clearly indicates that the approval of the Grant for the benefit of both properties was a condition precedent for the agreement. If the Pauszek property was not included in the Grant, such omission would render the specifications of the easement meaningless. It would also leave the important issue of the location and scope of the easement undefined. We are compelled to avoid this result. *See Coker*, 650 S.W.2d at 393 (construction of contract should harmonize and give effect to all provisions of contract so none rendered meaningless).

Reading the original agreement in its entirety, we determine as a matter of law that the parties intended the participation of both the Hagan and Pauszek properties in the Grant as a condition precedent to an obligation to convey the easement under the contract. *See Sturges*, 52 S.W.3d at 728 (when contract is not ambiguous, certain or definite legal meaning or interpretation of contract is determined as matter of law). That condition did not occur and, therefore, Hagan was under no obligation to grant an easement to David Pauszek. *See Hohenberg Bros.*, 537 S.W.2d at 3. Therefore, the district court erred by granting summary judgment on the issue of Hagan's duty to convey an easement.

**CONCLUSION**

We hold that the district court erred (1) in its construction of the condition precedent contained in the Temporary Water Agreement and (2) by establishing the location and scope of the

13

contemplated easement as a matter of law in the absence of specifications to be set by the Water Company or the Grant Authority. Accordingly, we reverse the summary judgment in favor of David Pauszek that compels Hagan to grant an easement along the existing water connection along with all costs and attorney's fees assessed. Because we hold as a matter of law that David Pauszek may not enforce the Temporary Water Agreement, we need not address Hagan's other issues. Hagan did not seek summary judgment, and, therefore, we remand the case for further proceedings consistent with this opinion.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed:   May 26, 2005

14