**Roger DIXON, Appellant,**

v.

**E.D. BULLARD COMPANY and Lone Star Industries, Inc., Appellees.**

No. 14–02–00638–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 19, 2004.

Rehearing Overruled July 22, 2004.

Jason A. Gibson, Russell William Endsley, Houston, for appellants.

Jerry Kacal, Steve A. Bryant, Houston, for appellees.

Panel consists of Justices LESLIE BROCK YATES, J. HARVEY HUDSON, and FOWLER.

## MAJORITY OPINION

LESLIE BROCK YATES, Justice.

Appellant Roger Dixon asks this court to reverse a summary judgment granted in favor of appellees E.D. Bullard Company and Lone Star Industries, Inc. on his personal injury claims arising out of exposure to silica during his employment as a sandblaster. In two issues presented, Dixon complains that (1) the trial court abused its discretion by denying Dixon's motion to strike appellees' summary judgment evidence filed less than twenty-one days before the hearing on appellees' motion for summary judgment and by considering the late-filed evidence; and (2) summary judgment was improperly granted on the basis of the applicable statute of limitations because there are fact questions as to when Dixon knew or should have known of his occupation-related lung disease. We agree summary judgment was improper and reverse and remand.

### Procedural and Factual Background

Dixon filed this lawsuit on March 8, 2000, asserting causes of action against several defendants for strict liability, negligence, and breach of express and implied warranties and seeking exemplary damages. Dixon alleged he suffers from silico-

sis due to exposure to silica during his employment as a sandblaster. Dixon did not specifically plead the discovery rule in his original petition, but in his factual statement, he said he suffered personal injuries as a result of working as a sandblaster from 1971 to 1985.

On February 21, 2002, appellees filed a joint motion for summary judgment based upon the affirmative defense of limitations. In that motion, appellees conceded the application of the discovery rule to Dixon's claims. Dixon filed his response to the motion on March 11. Appellees filed a joint reply on March 15, which contained summary-judgment evidence not submitted to the court with appellees' joint motion. Appellees did not file a motion for leave to file additional summary-judgment evidence. Also on March 15, Dixon filed Plaintiff's Fourth Amended Petition in which he pleaded the application of the discovery rule. On March 18, Dixon filed a motion to strike the joint reply to which appellees did not respond. A hearing was held on the summary-judgment motion that same day. The trial court granted the motion for summary judgment and denied Dixon's motion to strike. Dixon timely filed a motion to reconsider and a motion for new trial, and the motions were overruled by operation of law on July 3.

## Analysis

### A. Late-filed summary judgment evidence was not considered by the trial court.

In his first issue, Dixon complains that the trial court should have granted his motion to strike and that it improperly considered appellees' late-filed summary judgment evidence. Appellees contend that they were first put on notice that Dixon was asserting the discovery rule by his inclusion of certain medical records as part of his evidence filed in his response to

the motion for summary judgment. Appellees contend that Dixon did not plead the discovery rule until March 15, the last business day before the hearing on appellee's motion for summary judgment. Appellees also assert that Dixon did not file a motion for continuance or request leave of the trial court to supplement the record after the trial court denied Dixon's motion to strike, and thus waived the right to complain that he was deprived of a right to respond to appellees' late-filed evidence.

Rule 166a of the Texas Rules of Civil Procedure sets forth the deadlines for the filing of a motion for summary judgment and supporting evidence and for the filing of a response and supporting evidence. *See* TEX.R. CIV. P. 166a(c). The motion and any supporting affidavits shall be filed and served at least twenty-one days before the hearing date. *See id.* The nonmovant may file a response and opposing affidavits not less than seven days prior to the hearing date. *See id.* Rule 166a does not specify when a reply to a nonmovant's response must be filed. *See, e.g., Alaniz v. Hoyt,* 105 S.W.3d 330, 339 (Tex.App.-Corpus Christi 2003, no pet.) (stating that "[r]ule 166a(c) does not specify the time within which a movant's reply to a [nonmovant's] response must be filed," but holding that nonmovant's failure to object to evidence submitted in reply to response waived any complaint on appeal as to trial court's consideration of evidence attached to reply brief). Nonetheless, summary judgment evidence must be filed at least twenty-one days before the hearing date with only one exception. "Summary judgment evidence may be filed late, but only with leave of court." *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996). Where nothing appears of record to indicate that late filing of summary judgment evidence was with leave of court, it is presumed that the trial court did not

consider it. *See id.* (citing *INA of Texas v. Bryant,* 686 S.W.2d 614, 615 (Tex.1985)); *Texas Airfinance Corp. v. Lesikar,* 777 S.W.2d 559, 561 (Tex.App.-Houston [14th Dist.] 1989, no writ) (stating that appellate court must presume trial court did not consider summary judgment movant's supplemental affidavit filed twelve days before order granting summary judgment was signed because affidavit was not timely filed and nothing in record indicated trial court granted leave to file); *see also Balderrama v. City of Castroville,* No. 04–03–00035–CV, 2003 WL 22047627, at *1 (Tex. App.-San Antonio Sept.3, 2003, no pet.) (not designated for publication) ("Because the record does not indicate the trial court granted the City permission to late-file Ms. Quirk's amended affidavit and because the City does not dispute appellants' assertion that no such permission was given, the amended affidavit was not properly before the trial court and we assume it was not considered by the court for summary judgment purposes.") (citations omitted).

 In this case, appellees did not file a motion for leave to file additional summary judgment evidence, and there is nothing in the record reflecting that the trial court granted leave.[1] Most of the evidence submitted by appellees as part of their reply was new evidence. Applying the rule stated in *Benchmark* leads us to conclude the evidence submitted by appellees with their reply brief less than twenty-one days before the hearing was untimely filed, and we must presume the trial court did not consider it. Accordingly, we overrule Dixon's first issue, and therefore decide whether summary judgment was proper based only on the evidence timely submitted by both parties.[2]

---

**1.** Appellees did not file a response to Dixon's motion to strike, asking the trial court to grant leave for the filing of additional summary judgment evidence, and we are not at liberty to treat the trial court's orders denying the motion to strike or granting summary judgment as implied rulings granting such leave when neither order contained any language to that effect. *See Neimes v. Ta,* 985 S.W.2d 132, 138 (Tex.App.-San Antonio 1998, pet. dism'd by agr.) ("The Texas Supreme Court has mandated that we presume the trial court did not consider a late-filed response unless something in the record indicates it did. Accordingly, whether the record contains the requisite 'something' is dispositive. Because this factor, standing alone, is dispositive, no other factor—including whether a movant objects—is or can be material.") (citations omitted). Moreover, if we were to hold that the denial of the motion to strike was equivalent to a grant of leave for a movant to file summary judgment evidence less than twenty-one days before the summary judgment hearing, we would be relieving movants of their responsibility to timely file their supporting evidence, as required by Rule 166a(c), and improperly shifting the burden from movants to nonmovants. *See id.* ("[W]e hold ... that appellants were not required to object to

[nonmovants'] response as untimely filed. To hold otherwise ... would be logically inconsistent with the burden expressly placed on summary judgment respondents by the Supreme Court of Texas in Rule 166a(c) and with the presumption the court has mandated by its interpretation of the rule.").

**2.** Although our disposition of Dixon's first issue does not require us to address appellees' argument that they were surprised by Dixon's reliance on the discovery rule in his response to their motion for summary judgment, we note that appellees' motion for summary judgment squarely contradicts any claim of surprise or prejudice by Dixon's reliance on the discovery rule's application to his claims. In any event, Plaintiff's Fourth Amended Petition is presumed timely filed. *See Goswami v. Metro. Savings & Loan Ass'n,* 751 S.W.2d 487, 490–91 (Tex.1988) (stating that when record is silent of any basis to conclude that the amended petition was not considered by the trial court, and when opposing party has not shown surprise or prejudice, leave of court is presumed) (citations omitted); *Wilson v. Korthauer,* 21 S.W.3d 573, 578 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Goswami* for its recitation of two factors for when leave is presumed for amended pleading).

**B. Summary judgment was improper because there is a fact question as to when Dixon knew or should have known he had a work-related disease.**

█ Appellees filed a traditional motion for summary judgment, and therefore had the burden to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Tex.R.App. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). As defendants, they must conclusively negate at least one essential element of each of Dixon's causes of action or conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). The appellees' motion rested solely on their affirmative defense of limitations. As movants, appellees bore the burden of establishing the absence of genuine issues of material fact regarding when Dixon knew or should have known of his injuries. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex.1989) ("Thus, in a summary judgment setting, the burden rests upon the movant defendant not only to plead limitations, but also to negate the discovery rule."). In deciding whether a disputed material fact issue exists precluding summary judgment on appellees' affirmative defense, we resolve every reasonable inference in favor of Dixon and take all evidence favorable to him as true. *See Science Spectrum*, 941 S.W.2d at 911.

█ A plaintiff must commence a lawsuit for personal injuries within two years after the day the cause of action accrues. *See* Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon 2002). Because section 16.003(a) does not define the accrual date, courts are charged with the responsibility of articulating the rules governing accrual. *See Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex.1998) (citations omit-

ted). In those cases when the "nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable," courts apply the discovery rule. *See id.* at 37 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1994)). Under the discovery rule, a cause of action does not accrue "until a plaintiff knows, or through the exercise of reasonable care and diligence, 'should have known of the wrongful act and the resulting injury.'" *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996)). In *Childs*, the Texas Supreme Court was faced with the correct formulation and application of the discovery rule in the latent occupational disease context. 974 S.W.2d at 33. The court adopted a rule and explained its application as follows:

> We therefore hold that the approach that best balances the interests implicated in latent occupational disease cases is one that defers accrual until a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related. Thus, in cases involving latent occupational diseases, 'discovery of the injury' should not be equated with a plaintiff's discovery (1) of the precise name of the disease that is causing his symptoms or (2) that the disease is permanent. The seriousness of a personal injury need not be fully apparent or even fully developed in order to commence the statute of limitations.

*Id.* at 40–41. The court reiterated that "a final diagnosis is not always necessary before a cause of action can accrue," and also emphasized that "a plaintiff whose condition has not been affirmatively diagnosed by a physician can have or, in the exercise

of reasonable diligence could have, access to information that requires or would require a reasonable person to conclude he likely suffers from a work-related illness." *Id.* at 42. The court also stated that a plaintiff's suspicions about the nature and cause of her injury, which may be evidenced by the filing of a worker's compensation claim or lawsuit, "represent an additional factor that, when considered with the other facts and circumstances presented by each case, could give rise to conflicting inferences about the plaintiff's knowledge of the injury and its likely cause." *Id.* at 43. Although inquiries involving the discovery rule usually entail questions for the trier of fact, "the commencement of the limitations period may be determined as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Id.* at 44.

In this case, the evidence submitted by appellees as support for their motion reflects that Dixon was admitted to St. Francis Hospital in Tulsa, Oklahoma on November 29, 1996, and discharged on December 5, 1996. The discharge summary was transcribed after Dixon was discharged. He complained of a sudden onset of nausea and vomiting. He "admitted to having a history of working as a sandblaster for approximately twelve years." He said he was homeless and "during the early Fall [was] in the deserts of southern California, Arizona and Nevada." He "had associated shortness of breath and productive cough with green sputum." Dixon's x-rays showed "unusual bilateral pulmonary opacities in the mid and upper lung fields consistent with possible tuberculosis." Another entry on the discharge summary reads as follows:

> Chest x-ray two view [sic] showed bilateral pulmonary opacities in the mid and upper lungs consistent with tuberculosis, though likely chronic in nature. The

possibility of underlying active tuberculosis could not be totally excluded; comparison with previous studies was recommended to evaluate possible changes. At the time, we are unable to obtain old chest x-rays.

The discharge summary also states, "The patient is a veteran and has been treated in Amarillo, Texas. He says he has had a history of 'bad chest x-rays' for many years and in the past has not been diagnosed with tuberculosis." The written discharge diagnoses were "[a]ctive pulmonary tuberculosis" and "[s]ilicosis secondary to twelve-year history of sandblasting." Among the "Discharge Instructions" was the following notation: "The patient is to follow-up [sic] at the Tulsa County Health Department Tuberculosis Clinic." It also reads as follows: "The December 14, 1996, sputum cultures reported positive for tuberculosis. Will try to contact patient." December 14 was nine days after Dixon's discharge from the hospital. Excerpts of Dixon's May 22, 2001 deposition given in this case, also submitted as evidence in support of appellees' motion, contains Dixon's testimony that he had pneumonia in 1996 and his statement that the pneumonia was connected with silicosis. He also, however, said that in 1996, St. Francis Hospital had "found this stuff, you know, they thought was tuberculosis."

In response to appellees' motion, Dixon submitted additional documents relating to his 1996 hospital stay. In a "History and Physical," dictated and transcribed on December 1, 1996 when Dixon was admitted to St. Francis Hospital in Tulsa, the "History" section begins as follows: "This 52-year old White male had a sudden onset of nausea and vomiting for 14 hours, beginning on the 29th of November, 1996, after he had eaten some food, associated with shortness of breath and cough productive of green sputum.... He also complained

of diffuse abdominal spasm of the entire abdomen with no diarrhea." Under the category of "Pulmonary," it reads that Dixon had "[n]o known history of pneumonia or tuberculosis." The chest x-ray then showed "bilateral mid upper lung coarse infiltrates and volume loss; questionable old tuberculosis." "Impression" given was "[p]robable pneumonia" and "[q]uestionable tuberculosis." The physician also noted "[t]here is a left inguinal hernia present."

Dixon also submitted an affidavit saying that he was not diagnosed with silicosis or an occupation-related lung disease until late April or early May of 1998. Regarding the 1996 hospital stay, Dixon said that he was tested for tuberculosis and was given breathing treatments. He said he was told his x-rays were abnormal but inconclusive and was told that his problem appeared to be tuberculosis. He further testified that he was not told by the doctor who treated him during that hospital stay that he had silicosis or that his lung problems were related to his work as a sandblaster. He also testified that he did not receive any medical records from St. Francis Hospital after his discharge. He said that in July of 1997, he had the inguinal hernia repaired by the Amarillo VA. He further testified,

> Prior to the surgery, an x-ray was taken of my lungs which showed an abnormality. The surgeon told me that my x-ray showed that I may have active tuberculosis. After the hernia repair, I was put in respiratory isolation until the doctors knew if I have tuberculosis or not. When the test came back negative, I was discharged about 3 or 4 days later.

Dixon said that he was not contacted by his treating physician or any other staff from St. Francis Hospital after his discharge in December of 1996. In his Application for Disability Insurance Benefits, filed in June of 1999 and submitted by Dixon as part of his evidence in opposition to summary judgment, Dixon said, "I became unable to work because of my disabling condition on April 1, 1990." (The typewritten form initially said April 1, 1998, but 1998 was crossed out in handwriting and 1990 written in and initialed by R.D.D. (Dixon's initials)). Additional excerpts of Dixon's deposition reflect that Dixon had heard the word silicosis in the late 1980s, and he said he was diagnosed with it in May 1998. He also denied having had chest x-rays taken prior to early 1998 and said he had asthma for more than five years. In a May 31, 2001 report prepared by an expert retained by Dixon, a physician said that Dixon "was having problems with shortness of breath in the 1990s but did not understand why or do much in the way of evaluation." He also wrote that a 1978 chest x-ray was normal and that Dixon "was hospitalized with 'pneumonia' in St. Francis Hospital in 1996."

We do not find Dixon's deposition testimony in 2001, in which he said he had pneumonia in 1996 due to silicosis, to be persuasive evidence as to what Dixon knew or should have known regarding his condition and its cause in 1996 or, at a minimum, before March 8, 1998 (more than two years prior to his filing suit). Prior to his deposition, he had been affirmatively diagnosed with silicosis, and it is highly plausible that his explanation that the pneumonia he had in 1996 was related to silicosis was based on his new understanding of his condition. The same is true for the statement on his application for disability benefits that he became unable to work in April of 1990. That statement does not reflect what Dixon knew or should have known in 1996. To the contrary, our review of the summary judgment evidence reflects there is contradictory testimony as to whether Dixon had "bad" x-rays prior to 1996 and

whether he knew or should have known in 1996 or earlier that he had a work-related disease.

Appellees have not met their burden of proving that Dixon did receive his medical records from St. Francis Hospital before April of 1998. At a minimum, a fact question exists as to whether Dixon received those records or was contacted after his discharge by his treating physician during that stay, especially in light of Dixon's testimony that he was homeless at that time. Based on our review of the summary judgment evidence properly before the trial court, prior to April of 1998, it was not unreasonable for Dixon to think his respiratory problems were related to tuberculosis, a probable diagnosis he was given more than once. Furthermore, appellees presented no evidence to show that Dixon failed to exercise due diligence in treating his symptoms between the time of his discharge from St. Francis hospital in December of 1996 and his awareness he had an occupation-related lung disease in April or May of 1998—a time period of less than 15 months.[3]

Thus, reviewing the evidence in a light most favorable to Dixon, there is a fact question as to when Dixon knew or should have known his illness was work related. *See, e.g., Childs*, 974 S.W.2d at 45–46 (stating that summary judgment for defendant

---

3. The dissent argues that Dixon failed to exercise due diligence after his discharge from the hospital in December of 1996 and again after he was discharged from the hospital in July of 1997, when he was told that he did not have tuberculosis. We are persuaded, however, that *Childs* suggests that a fact question remains as to when Dixon knew or should have known through the exercise of reasonable diligence that his injury was work-related. In *Childs*, the Supreme Court rejected the arguments that the claims of the two plaintiffs at issue, Haussecker and Martinez, were time-barred despite facts more favorable to the defendants than those of this case. *Childs*, 974 S.W.2d at 45. Regarding Haussecker, the court reached this conclusion even though, as early as the 1960s, Haussecker suspected he had an occupational illness because several of his co-workers had died, including one who had died of silicosis. *Id.* However, several doctors dispelled Haussecker's suspicions by telling him that his symptoms were not work-related. *Id.* Also, the defendant offered no evidence about whether Haussecker stopped consulting doctors about his deteriorating health during an earlier time period or whether he could have been diagnosed with an occupational illness during that time period. *Id.* at 46. With respect to Martinez, who filed suit on August 13, 1992, he had filed a worker's compensation claim in 1989 for a lung disease arising out of and in the course of his employment. *Id.* at 36. Yet, he said he did not visit a doctor until September 1990 because he could not afford a doc-

tor, and his worker's compensation carrier refused to pay for his medical treatment. *Id.* Although he was told by that doctor something was wrong and the doctor recommended a biopsy, Martinez did not comply because he allegedly could not afford it. *Id.* Accordingly, a biopsy was not performed until a year later, when Martinez was told he had silicosis. *Id.* The court said Martinez failed to exercise reasonable diligence once he was apprised of facts that would prompt a reasonably diligent person to seek information about his injury and its likely causes. *Id.* at 47. The court nonetheless held that Martinez's claims were not time-barred as a matter of law because the defendant failed to offer any summary judgment evidence that a reasonably diligent investigation would have led Martinez to discover before August 13, 1990, that he suffered an occupational illness. *Id.* Therefore, a fact question existed with respect to whether Martinez knew or should have known through the exercise of reasonable diligence that his injury was likely work-related before August 13, 1990. *Id.* In light of the supreme court's treatment of Martinez's and Haussecker's claims, we are compelled to hold that a fact question remains as to whether Dixon knew or should have known through the exercise of reasonable diligence that his injury was likely work-related before March 8, 1998. Appellees have presented no evidence that a reasonably diligent investigation would have led Dixon to discover before March 8, 1998, that he suffered from a work-related illness.

was improper because fact question arose as to what plaintiff knew about his illness' connection with his work, even when co-workers were suffering from similar symptoms and plaintiff suspected he had an occupational illness; doctors affirmatively told plaintiff his symptoms and illnesses were not work-related); *Youngblood v. U.S. Silica Co.*, No. 06–03–00020–CV, 2003 WL 22964572, at * 4 (Tex.App.-Texarkana Dec.18, 2003, no pet. h.) (not designated for publication) (reversing summary judgment granted for employer on basis of limitations in silicosis lawsuit because although plaintiff had received news of abnormal x-rays, there was no evidence plaintiff was made aware of differential diagnoses of silicosis and it was reasonable for plaintiff to believe he had tuberculosis until he was told he had silicosis less than two years before filing suit). We therefore find the trial court erred in granting summary judgment.

We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## J. HARVEY HUDSON J., dissenting.

## J. HARVEY HUDSON, Justice, dissenting.

Indulging, as I must, all reasonable inferences in favor of appellant, I see no fact issue precluding summary judgment.

The summary judgment proof reflects appellant began having shortness of breath in the early 1990's. The condition became so disabling that appellant allegedly could not work after April 1, 1990. In 1996, appellant was admitted to the hospital suffering from sudden nausea, vomiting, shortness of breath, and a cough with green sputum. At that time, appellant admitted to having a history of "bad chest x-rays" and to having worked as a sandblaster for twelve years. Appellant was hospitalized for almost a week from November 29 through December 5, 1996. The record indicates his physicians were not certain whether appellant was suffering from pneumonia, tuberculosis, silicosis, or a combination of these ailments. However, when he was discharged, appellant was instructed to "follow-up" at the Tulsa County Health Department Tuberculosis Clinic. Apparently, appellant made no attempt to follow-up or otherwise seek a definitive diagnosis of his ailment.

In July of 1997, appellant underwent surgery for an inguinal hernia. X-rays taken before surgery again indicated a lung abnormality. Tests conducted at that time proved the lung problem was *not* due to tuberculosis. However, again appellant did not seek a more definitive diagnosis of the problem. As appellant's own expert witness characterized the situation, appellant "was having problems with shortness of breath in the 1990's but did not understand why *or do much in the way of evaluation.*" (Emphasis added.)

The primary purpose of a statute of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds. *Robinson v. Weaver,* 550 S.W.2d 18, 20 (Tex.1977). Here, if appellant's health was injured by the appellees, the injury occurred in the 1980's. Appellant did not file suit until March 8, 2000—more than twenty years after the alleged tort. To toll the statute of limitations, appellant relies upon the "discovery rule." Under such rule, the limitation period does not begin to run until appellant learns of or, *in the exercise of reasonable care and diligence, should have learned of the injury. Gaddis v. Smith,* 417 S.W.2d 577, 578 (Tex. 1967) (emphasis added).

While I agree there may well be a fact issue regarding whether appellant was told he was suffering from silicosis in 1996, I think there is no question that appellant failed to exercise reasonable care and diligence in pursing the nature and cause of his breathing difficulties. Accordingly, I agree with the trial court—appellant's cause of action is barred by limitations. For this reason, I respectfully dissent.