**Reversed and Remanded and Majority and Concurring Opinions filed April 1, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00580-CV

---

### ALPHAVILLE VENTURES, INC. AND NOAM BIZMAN, Appellants

### V.

### FIRST BANK, Appellee

---

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2011-16429**

---

## M A J O R I T Y   O P I N I O N

Appellants, Alphaville Ventures, Inc. ("Alphaville") and Noam Bizman ("Bizman"), appeal a summary judgment in favor of appellee, First Bank, in its suit to recover the balance due on a promissory note and guarantee. In their sole issue, appellants contend the trial court erred by granting summary judgment because First Bank failed to prove it is owner and holder of these instruments. We reverse and remand.

## I. BACKGROUND

For purposes of this appeal, the following pertinent facts are undisputed. Under the promissory note at issue, Small Business Loan Source LLC ("SBLS") was the original lender, and 5M Corp dba Arby's was the original borrower. Via an "Allonge to Promissory Note," 5M Corp dba Arby's assigned all its liabilities and obligations under the note to Alphaville. In conjunction with that assignment, Bizman, the president of Alphaville, signed a guarantee of Alphaville's obligations under the note, and Alphaville granted SBLS a security interest in certain equipment. Alphaville subsequently defaulted on the Note. First Bank filed suit, alleging the note and guarantee had been assigned from SBLS to First Bank and seeking the amount due.

First Bank filed an original motion for summary judgment followed by an amended motion—the operative motion. On March 30, 2012, the trial court signed a Final Summary Judgment ordering that First Bank recover the following from appellants, jointly and severally: $613,038.46 due on the note; pre- and post-judgment interest; attorney's fees of $20,757, plus $5,000 for each stage of an appeal; and costs of court.

## II. ANALYSIS

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)). If the movant establishes its right to summary judgment, the burden shifts to the nonmovant to raise a genuine

issue of material fact. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take all evidence favorable to the nonmovant as true, consider the evidence in the light most favorable to the non-movant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *See id.*; *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

To collect on a promissory note, a plaintiff must establish (1) there is a note, (2) the plaintiff is legal owner and holder, (3) the defendant is the maker, and (4) a certain balance is "due and owing." *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 324 (Tex. App.—Houston [14th Dist.] 2011, no pet.). On appeal, appellants do not challenge whether First Bank proved (1) validity of the note, (2) appellants are respectively the maker and guarantor, and (3) the amount awarded is the balance due and owing. Appellants' only contention is that First Bank failed to prove it is owner and holder of the note and the guarantee and more specifically that it was assignee of these instruments from SBLS.

## A. Preliminary Issues

We must address preliminary issues regarding (1) whether appellants' pleading was sufficient to permit it to challenge the summary judgment, and (2) what evidence we may consider in reviewing the summary judgment.

### 1. Appellants' Pleading

First Bank contends that appellants may not challenge whether First Bank proved it is assignee of the note and guarantee because appellants did not file a verified denial under Texas Rule of Civil Procedure 93. Rule 93 provides, "A pleading setting up any of the following matters, unless the truth of such matters

3

appear of record, shall be verified by affidavit." Tex. R. Civ. P. 93. One such listed matter is "A denial of the genuineness of the indorsement or assignment of a written instrument upon which suit is brought by an indorsee or assignee and in the absence of such a sworn plea, the indorsement or assignment thereof shall be held as fully proved." *Id.* 93(8).

By its plain language, rule 93(8) requires a defendant to make a verified denial of the "**genuineness**" of the endorsement or assignment of the written instrument on which a suit is brought. *See id.* (emphasis added). Failure to file a verified denial under rule 93(8) waives a challenge only to the genuineness of an endorsement or assignment which has otherwise been produced; absence of a verified denial does not relieve the plaintiff of the burden to prove existence of the transfer. *See Vahlsing v. Collier Cobb & Assocs. of Dallas, Inc.*, 560 S.W.2d 117, 117 (Tex. Civ. App.—Dallas 1977, no writ); *see also Havens v. Ayers*, 886 S.W.2d 506, 510 (Tex. App.—Houston [1st Dist.] 1994, no writ) (following *Vahlsing*). Thus, in the absence of a sworn plea, issues such as execution, authority of the assignor, and genuineness of signatures are waived; however, these issues are dependent upon proof that an endorsement or assignment actually exists. *See Vahlsing*, 560 S.W.2d at 118. If the existence of the endorsement or assignment is omitted from the movant's summary-judgment proof, lack of proof of this material fact precludes summary judgment. *See Vahlsing*, 560 S.W.2d at 118; *see also Havens*, 886 S.W.2d at 510. In the present case, appellants do not challenge the genuineness of an endorsement or assignment produced by First Bank. Rather, appellants contend that First Bank failed to prove existence of an endorsement or assignment.

First Bank cites *Calbert v. Associates Asset Management, LLC*, No. 01-09-01062-CV, 2010 WL 2305862, at *3 (Tex. App.—Houston [1st Dist.] June 10,

2010, no pet.) (mem. op.), in which the court suggested the borrower was precluded from challenging the lender's summary-judgment evidence in a suit on a note because the borrower failed to file a verified denial under rule 93(8). However, *Calbert* is distinguishable from the present case because the face of the *Calbert* note contained an endorsement from the original lender to the plaintiff and the defendant failed to deny genuineness of that endorsement. *See id.*

First Bank also complains that appellants did not file a verified denial under rule 93(4). Rule 93(4) includes the following as a matter on which the defendant must file a verified denial: "That there is a defect of parties, plaintiff or defendant." Tex. R. Civ. P. 93(4). Generally, a "defect of parties" refers to joinder problems involving necessary or indispensable parties. *CHCA E. Houston, L.P. v. Henderson*, 99 S.W.3d 630, 633 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Appellants' argument is not that the original lender is a necessary or indispensable party but rather that First Bank failed to prove an element of its claim because it did not establish it was owner and holder of the note. Accordingly, we conclude appellants were not required to file a verified denial in order to challenge whether First Bank established it is owner and holder.

## 2.     What Evidence We May Consider

To prove it is owner and holder of the note and guarantee, First Bank presented the affidavit of its representative, Wayne Ballenger, and certain documents. Appellants filed a response contending First Bank failed to prove it is owner and holder of the instruments. Nine days before the summary-judgment hearing, First Bank filed a reply supported by Ballenger's supplemental affidavit and further documents purporting to prove the assignment. Appellants moved to strike the supplemental evidence as untimely filed but did not obtain an express ruling on the motion.

5

Appellants contend we may not consider the supplemental evidence because it was untimely filed. First Bank urges that appellants waived this complaint by failing to obtain a ruling on their motion to strike. We conclude appellants were not required to obtain a ruling and the untimely supplemental evidence may not be considered as part of the summary-judgment record.

Texas Rule of Civil Procedure 166a(c) provides, "Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing." Tex. R. Civ. P. 166a(c). Summary-judgment evidence, whether supporting or opposing the motion, may be filed late, but leave of court is required. *See id.*; *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996). We will treat late-filed evidence as part of the summary-judgment record as long as the trial court affirmatively indicated in the record that it accepted or considered the evidence. *Auten v. DJ Clark, Inc.*, 209 S.W.3d 695, 702 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Stephens v. Dolcefino*, 126 S.W.3d 120, 133–34 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)). Where nothing in the record indicates the trial court granted leave for the late filing, we presume the trial court did not consider the evidence. *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985); *see Benchmark Bank*, 919 S.W.2d at 663; *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Tex. Airfinance Corp. v. Lesikar*, 777 S.W.2d 559, 561–62 (Tex. App.—Houston [14th Dist.] 1989, no writ). Leave to late file summary-judgment evidence "may be reflected in a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing." *Pipkin*, 383 S.W.3d at 663 (quoting *Neimes v. Ta*, 985 S.W.2d 132, 138 (Tex. App.—San Antonio 1998, pet. dism'd by agr.)).

6

We conclude appellants were not required to obtain a ruling on their objection that the evidence was late filed because they were not required to object. Requiring a party to object that summary-judgment evidence was late filed would be inconsistent with (1) Rule 166a(c), which places the onus on the party filing the evidence to obtain leave of court, and (2) the dictate of the Texas Supreme Court, cited above, that we presume the trial court did not consider late-filed evidence unless the record affirmatively indicates it granted leave. *See Neimes*, 985 S.W.2d at 138; *see also Dixon v. E.D. Bullard Co.*, 138 S.W.3d 373, 376 n.2 (Tex. App.—Houston [14th Dist.] 2004, pet. granted, judgm't vacated w.r.m.) (stating trial court's denial of non-movant's request to strike movant's late-filed summary-judgment evidence did not constitute implied ruling granting leave for late filing because such a conclusion would contradict burden on movant to timely file evidence or obtain leave of court); *Luna v. Estate of Rodriguez*, 906 S.W.2d 576, 582 (Tex. App.—Austin 1995, no writ) ("If the movant files late summary judgment *evidence* and no order appears in the record granting leave to file, we presume the trial court did not consider the evidence **regardless of whether the nonmovant failed to object to the evidence**.") (latter emphasis added); *But see City of Coppell v. Gen. Homes Corp.*, 763 S.W.2d 448, 451–52 (Tex. App.—Dallas 1988, writ denied) (holding appellate court could consider summary-judgment response even if late filed because opposing party did not move to strike and trial court did not strike sua sponte); *but see also Neimes*, 985 S.W.2d at 138 (commenting *City of Coppell* was "plainly wrong").

First Bank did not specifically request leave to late file the supplemental evidence. The record does not contain any express order granting leave or a record of the oral hearing. In its judgment, the trial court granted summary judgment "[a]fter considering the pleadings, the motion, affidavits, and other evidence on

7

file." This language does not reflect the trial court considered the supplemental evidence. The trial court's statement that it considered "affidavits," in the plural, is not an affirmative indication it considered the supplemental affidavit; there were two affidavits (from Ballenger and First Bank's attorney) attached to the motion for summary judgment, which the trial court may have meant by referencing "affidavits," in the plural. Additionally, the phrase "other evidence on file" is too general to necessarily encompass the supplemental evidence. The trial court did not state that it considered First Bank's reply or the supplemental evidence attached to the reply.

First Bank cites several cases to support its contention that appellants were required to obtain a ruling on their objection to the late-filed evidence. Those cases are inapplicable because they hold that a party must object to a defect of form in summary-judgment evidence and obtain a ruling to preserve such a complaint—which is different than a contention that summary-judgment evidence was not timely filed. *See Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 650 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Seidner v. Citibank (S.D.) N.A.*, 201 S.W.3d 332, 334–35 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Hou–Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.— Houston [14th Dist.] 2000, no pet.).

Accordingly, we will not consider the supplemental evidence. We will address whether the evidence attached to the motion for summary judgment established First Bank is owner and holder of the note.

## B. Summary-Judgment Evidence

We first outline the affidavit and documents presented by First Bank to prove it is owner and holder of the note and guarantee.

8

### 1.    Ballenger Affidavit

Ballenger signed the affidavit as "Vice-President" of First Bank and averred in pertinent part:

> BEFORE ME, the undersigned authority, on this day, personally appeared Wayne Ballenger, who, upon first being duly sworn, states that he is an authorized representative of Plaintiff, and is a custodian of the records for Plaintiff First Bank as assignee of [SBLS].
>
> "My name is Wayne Ballenger. I am over eighteen (18) years of age and I have never been convicted of a felony crime or other crime involving moral turpitude, and I am fully competent to make this Affidavit. I have knowledge of the facts stated herein and they are all true and correct.
>
> I am a duly authorized representative and a custodian of records for First Bank, as assignee of [SBLS]. Attached to Plaintiff's Original Petition are records from First Bank, as assignee of [SBLS]. True and correct copies of the following documents are attached to Plaintiff's Original Petition: U.S. Small Business Administration Note, (Exhibit "A"); Allonge to Promissory Note (Exhibit "B"). U.S. Small Business Administration Unconditional Guarantee ( Exhibit "C"); Security Agreement Exhibit "D"); UCC Financing Statement (Exhibit "E"); Loan Assignment, Assumption and Modification Agreement (Exhibit "F"), and Asset Purchase Agreement (Exhibit "G").
>
> First Bank, as assignee of [SBLS], is the current owner and holder of the Note and guaranty agreement. A true and correct copy of the Loan Purchase and Sale Agreement dated September 21, 2009 and redacted to delete unrelated loan information is attached to this affidavit.

> These records are kept by First Bank, as assignee of [SBLS] in the regular course of business, and it was the regular course of business of [SBLS] for an employee or representative of [SBLS], with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the exact duplicates of the originals.
>
> Defendant Alphaville Ventures, Inc. assumed all liabilities and obligations of 5MCorp. concerning the Note. Payment of the Note was guaranteed by Defendant/Guarantor, Noam Bizman as evidenced in the guaranty agreement. First Bank, as assignee of [SBLS], is the current owner and holder of the Note and Guaranty Agreements.
> . . .[1]
> The foregoing statements are true and correct. Further, Affiant sayeth not."

In summary, Ballenger averred that First Bank is owner and holder of the note and guarantee, as assignee of SBLS, and referenced a Loan Purchase and Sale Agreement dated September 21, 2009 ("the PSA").

## 2. Documentary Evidence

The PSA is the only document referenced by Ballenger that directly concerns the purported assignment from SBLS to First Bank.[2] The PSA, signed by officers of both parties thereto, states in pertinent part:

---

[1] We omit Ballenger's statements regarding demand for payment, appellants' default, the amount due and owing, and First Bank's claim for attorney's fees—issues undisputed on appeal.

[2] The Loan Assignment, Assumption and Modification Agreement and Asset Purchase Agreement referenced in the affidavit as Exhibits F and G to First Bank's original petition concern the assignment of the loan from the original borrower to Alphaville.

[SBLS] wishes to sell, and [First Bank] wishes to purchase, the loans and certain other assets owned by [SBLS] and referred to herein (collectively, the "Assets"), subject to the terms and conditions of this Agreement.

Now, therefore, it is hereby agreed as follows:

1.      In consideration of [consideration to be provided by First Bank to SBLS], the receipt and sufficiency of which is hereby acknowledged,[3] [SBLS] will convey the Assets to [First Bank] by executing and delivering to [First Bank] (i) endorsements without recourse conveying to [First Bank] [SBLS's] right, title and interest in the loans listed on Schedule A hereto (the "Loans"), and (ii) a Bill of Sale in the form attached hereto as Exhibit A, transferring [SBLS's] interest in the personal property listed on Schedule B hereto. . . .

. . .

5.      [SBLS] agrees that, following the consummation of the Transactions, it will execute such other documents, including endorsements of notes and assignments of other documents relating to the Loans, and take such other actions as may be reasonably required by [First Bank] in order to provide evidence of the transfer of the Assets to [First Bank].

Before further explaining the documentary evidence, we will address appellants' assertion that First Bank failed to establish appellants' loan was subject to the PSA. We disagree.

The parties agreed SBLS would convey to First Bank the loans listed on Schedule A, which is entitled "Loans Conveyed to First Bank" and included in the summary-judgment evidence. Schedule A has four columns for the entries thereon: "Loan Number"; "Name"; "State"; and "District." As asserted in Ballenger's affidavit, Schedule A was redacted to delete all entries except the following under the applicable columns:

---

[3] We omit language regarding the consideration provided by First Bank to SBLS, interests excluded from the agreement, and the entities' authority to enter into the PSA because those matters are not at issue in the present case.

11

6005          Arby's        TX          Houston, Tx

It also appears that the beginning portion of the loan number on this entry is redacted.

The note and guarantee both show the name of the loan as "Arby's." The note shows the original borrower as "5M Corp dba Arby's." It is undisputed 5M Corp assigned its obligations under the note to Alphaville. The loan number on the note is redacted entirely, but the guarantee and the assignment under which Alphaville purchased the note from 5M Corp show the last four figures of the loan number as "60-05." The summary-judgment evidence includes a "Lender's Transcript of Account" (showing activity at various points throughout the life of the loan). The transcript lists the loan number as "6005," with preceding numbers also redacted, and the borrower's name as "Arby's Alphaville Ventures Inc." Ballenger swore this transcript was a true and correct copy of the transcript for appellants' loan. We conclude the above-cited documents collectively show that appellants' loan was included on Schedule A as a loan subject to the PSA.

As appellants argue, the PSA itself did not effectuate a transfer to First Bank of "the loans and certain other assets" specified in the agreement. Instead, the PSA provided SBLS would consummate the contemplated transaction in the future via two steps: (i) executing and delivering endorsements without recourse conveying to [First Bank] [SBLS's] right, title, and interest in the loans listed on Schedule A; and (ii) executing and delivering a Bill of Sale in the form attached as Exhibit A, transferring [SBLS's] interest in the personal property listed on Schedule B.

Notably absent from First Bank's summary-judgment evidence are any separate documents constituting endorsements without recourse of the loans to be conveyed to First Bank, including appellants' note and guarantee. Further, there is no endorsement on the note and guarantee that is attached to First Bank's petition.

The form Bill of Sale referenced in the PSA is not attached to the PSA contained in First Bank's summary-judgment evidence. Rather, a fully executed Bill of Sale, dated September 30, 2009, is attached, although Ballenger did not refer in his affidavit to any executed agreements other than the PSA.[4] Accordingly, First Bank presented documentary proof of only one of the two steps required of SBLS to consummate the entire transaction.[5]

Appellants assert, and First Bank acknowledges, that the Bill of Sale does not alone prove the transfer of appellants' note and guarantee from SBLS to First Bank. The Bill of Sale provides in pertinent part:

> [SBLS], for good and valuable consideration paid and delivered by [First Bank], the receipt of which is hereby acknowledged, does sell to [First Bank] the Assets set forth on Schedule B attached hereto (the "Assets").
>
> [SBLS] hereby warrants that [SBLS] is the owner of the Assets free and clear of all mortgages, pledges, liens, charges, or encumbrances, except liens for current taxes not yet due and payable.
>
> Receipt of delivery of the Assets is hereby acknowledged by [First Bank].

---

[4] Although Ballenger did not reference the executed document, appellants raise no issue on appeal that the document was not authenticated.

[5] Additionally, in the PSA, First Bank agreed to execute and deliver to First Bank an "Assignment and Assumption of Liabilities Agreement" in the form attached as Exhibit B. There is also no such form document attached to the PSA in the record. Instead, an executed document entitled "Representations and Warranties of First Bank In Connection with Its Purchase of a Loan Portfolio Pursuant To A Certain Loan [PSA] Dated September 21, 2009," is attached. This title is different than the title of the document referenced in the PSA although the substance of the executed document essentially concerns First Bank's assumption of SBLS's liabilities relative to the subject loans. Regardless, we need not decide whether the executed document is the document contemplated in the PSA because it was not one of the steps necessary to transfer the loans from SBLS to First Bank—the issue on appeal—and instead concerned the consideration to be provided by First Bank to SBLS.

13

The PSA contemplated that the Bill of Sale would transfer SBLS's "interest in the personal property" listed on Schedule B, which is entitled "Assets Conveyed to First Bank" and included in the summary-judgment evidence. Schedule B is also redacted to delete unrelated loans but includes the following entry under columns for "SBA Loan Number" and "Borrower Name":

6005            Arby's

It is not clear what "interest in . . . personal property" the PSA referenced. Nevertheless, the PSA did not contemplate that a Bill of Sale would be utilized to transfer all instruments governing the loans subject to the PSA, including appellants' note and guarantee. The Bill of Sale used a broader term by referring to the sale and delivery of "Assets" listed on Schedule B, but "Assets" is not defined in the Bill of Sale. Further, on Schedule B, the list of "Assets" is contained on a separate paper entitled "Attachment I (Referenced in SBA Letter to First Bank dated 9/30/2009)." There is no such letter included in the summary-judgment evidence, and its contents are not otherwise reflected in the evidence. Thus, Schedule B does not otherwise shed light on what is meant by "Assets" transferred via the Bill of Sale. Construing "Assets" broadly to include all loan instruments would conflict with the PSA which contemplated the Bill of Sale would only transfer SBLS's "interest in . . . personal property." Because, under our standard of review, we must resolve this conflict in favor of appellants, we construe the Bill of Sale as transferring, at most, SBLS's interest in personal property.[6]

---

[6] As mentioned above, both the PSA and the executed Bill of Sale incorporate a Schedule B. There was only one Schedule B included in the summary-judgment evidence. It is unclear whether the same Schedule B was attached to both the original PSA and the executed Bill of Sale. However, that issue does not affect our analysis; even if that Schedule B is the same one incorporated in both the PSA and the executed Bill of Sale, the evidence shows at most that the Bill of Sale transferred some interest in appellants' personal property.

14

In addition to the above-described documents, First Bank presented (1) an affidavit of its attorney to support recovery of attorney's fees, (2) Alphaville's Response to Requests for Admission, and (3) excerpts from Bizman's deposition. None of this evidence concerns the transfer of the note and guarantee from SBLS to First Bank.

## C.     Owner and Holder Status

Appellants suggest, and First Bank seems to acknowledge, the documentary evidence does not alone establish First Bank is owner and holder of the note and guarantee. We agree. As discussed above, there is no documentary proof of the endorsements required to transfer the note and guarantee. Instead, First Bank suggests, and appellants dispute, that the affidavit itself, or in conjunction with the documents, established First Bank's owner-and-holder status. Appellants proffer several reasons that the evidence failed to establish First Bank is owner and holder: (1) Ballenger did not explain how he gained personal knowledge of the contents of his affidavit; (2) the affidavit is conclusory; and (3) the affidavit is controverted by the documentary evidence.

### 1.     Objection Regarding Personal Knowledge

First, appellants contend Ballenger failed to establish how he gained personal knowledge of the contents of his affidavit. Appellants assert Ballenger averred merely that he is a "duly authorized representative and a custodian of records" for First Bank but such a statement did not demonstrate how he gained personal knowledge. However, our court has recently held that a contention that an affidavit fails to show the basis for the affiant's personal knowledge is a complaint regarding a defect in form for which the complaining party must object in the trial court and obtain a ruling. *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (en

15

banc). In their summary-judgment response, appellants included a footnote asserting Ballenger failed to establish he had personal knowledge of the facts in the affidavit. To the extent the footnote adequately constituted an objection, appellants waived their complaint by failing to obtain a ruling.

### 2.    Contention that Affidavit is Conclusory and Controverted

Appellants also contend Ballenger's averment that First Bank, as assignee of SBLS, is owner and holder of the note is conclusory. This complaint is a challenge to an alleged substantive defect, which appellants may raise for the first time on appeal. *See Pico v. Capriccio Italian Rest., Inc.*, 209 S.W.3d 902, 909 (Tex. App.—Houston [14th Dist.] 2006, no pet.). A conclusory statement is "one that does not provide the underlying facts to support the conclusion." *Hou-Tex, Inc.*, 26 S.W.3d at 112 (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)). Appellants complain that Ballenger failed to state any facts to support his averment. Appellants also argue the affidavit is controverted by the documentary evidence. We address these contentions together because our analysis is overlapping.

First Bank relies on *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983), in which the Supreme Court of Texas held that an affiant's testimony that an attached exhibit is a true and correct copy of a note and he is owner and holder is sufficient summary-judgment evidence to establish this status absent controverting evidence. However, *Zarges* was a suit by the original lender shown on the note who had misplaced the note and did not involve an alleged assignee attempting to recover on a note. *See id.*

First Bank also relies on *McLernon*, in which our court followed *Zarges* when a plaintiff claimed it was owner and holder of a note via an assignment. 347 S.W.3d at 326. In that case, the plaintiff's representative averred as follows, inter

16

alia, in her affidavit supporting the plaintiff's motion for summary judgment: (1) an attached exhibit was a true and correct copy of the note, and the plaintiff was legal owner and holder; (2) the note was made payable to another entity because that entity was a subsidiary of the plaintiff used to collect certain monies owed to the plaintiff; (3) on a certain date, the other entity "granted, transferred and assigned" all of its interest in the note to the plaintiff, including any rights or obligations to collect the balance owed; and (4) another attached exhibit was a true and correct copy of the "Assignment of Notes." *Id.* at 325. We held that the affidavit was sufficient to prove the plaintiff was owner and holder of the note absent controverting evidence, although we concluded the documentary evidence also proved that status. *Id.* at 325–27; *see also Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 930–31 (Tex. App.—Houston [14th Dist.] 2013, no. pet. h.) (holding affiant's assertion of ownership of credit card account on behalf of bank was sufficient to establish such ownership absent controverting evidence and was not conclusory); *Ortega v. Cach, LLC*, 396 S.W.3d 622, 627–28 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding bank officer's statement in affidavit that defendant's credit-card account was "sold, transferred, and set over unto" plaintiff creditor was not conclusory and supporting documentation was not required).

We conclude the above-cited authority is not controlling in the present case. Unlike in those cases, Ballenger's statements, when considered together with the documentary evidence, cast doubt that there was underlying support for his averment that First Bank is owner and holder, as assignee of SBLS. Specifically, Ballenger **did** reference the facts on which he relied to support his averment, yet those facts do not provide such support. Construing the affidavit in the light most favorable to appellants, Ballenger indicated he was relying on only the PSA to support his averment. As discussed above, the PSA did not effect the transfer of

the note and guarantee and contemplated a future transfer via endorsements without recourse. The endorsements were not produced by First Bank. Further, Ballenger did not aver the endorsements were made or otherwise reference any endorsements. He did not even reference the executed Bill of Sale attached to his affidavit, much less explain why documentary proof was presented of only one of the two steps required under the PSA to consummate the entire transaction. For instance, he did not explain that his averment was based on the endorsements but articulate why they were not produced. Additionally, Ballenger did not reference or produce any other document assigning the loan instruments to First Bank if, despite the steps contemplated in the PSA, the transfer was effected through some means other than endorsements. Therefore, Ballenger's indication he relied solely on the PSA negated there was underlying support for his averment that First Bank was assignee.

As mentioned above, in its reply to appellants' summary-judgment response, First Bank attached supplemental documents purporting to prove the assignment, which we may not consider.[7] However, in the reply, First Bank alternatively contended the supplemental documents were unnecessary because the evidence attached to the motion was sufficient. First Bank referenced only the PSA as proving the assignment, thereby indicating it was continuing to rely on a document that, to the contrary, did not effect the transfer.

---

[7] In particular, First Bank presented (1) a "General Assignment," dated several days before First Bank filed the reply, confirming SBLS had previously assigned all of its interest in appellants' loan instruments to First Bank, and (2) a "Second Allonge," with the same date, confirming SBLS had previously assigned all of its interest in the note to First Bank. In the reply, First Bank asserted these documents were produced to appellants through discovery responses **five months** before, although the documents were not even executed until a few days before the reply was filed. Regardless, First Bank may not rely on these documents to prove the transfer because they were late filed without leave of court.

18

In summary, the trial court erred by granting First Bank's motion for summary judgment because it failed to conclusively establish it is owner and holder of the note and guarantee.

Accordingly, we sustain appellants' sole issue, reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.


/s/    John Donovan
Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., concurring).